## COMMONWEALTH *versus* SAMUEL THURLOW.

One act of sale constitutes an offence, within the meaning of the Revised Stat. *c.* 47, § 3, that no person shall presume to be a retailer or seller of spirituous liquors in a less quantity than twenty-eight gallons, unless licensed as a retailer of spirits.

An indictment, therefore, merely following the words of the statute, that the defendant presumed to be a retailer or seller of spirituous liquors, without a license, is insufficient ; it must aver, that at a time and place stated, he sold to a person named, or to a person unknown, as the case may be.

Such an indictment must aver that the defendant was not duly licensed, and on the trial it is incumbent on the government to produce *primâ facie* evidence of that fact, for as the county commissioners keep a record of the granting of licenses, the negative averment can be proved with facility.

INDICTMENT on Revised Stat. *c.* 47, § 3.

The 5th count avers, that the defendant, on the 2d of October, 1836, at Rowley, "without any authority or license therefor duly had and obtained according to law, did presume to be and was a retailer and seller of spirituous liquors in a less quantity than twenty-eight gallons and that delivered and carried

away all at one time, and did then and there sell and retail to one Michael Floyd two quarts of spirituous liquor."

The 12th, 13th and 14th counts aver, in like manner, that the defendant, on &c. at &c. did presume to be and was a retailer and seller &c., but omit the averment of a particular act of sale.

The indictment was tried in the Common Pleas, before *Cummins* J. The defendant having been found guilty on the counts above mentioned, he excepted to the instructions given by the court to the jury in the matters following : —

1. On each of the counts the attorney for the Commonwealth offered evidence of only one act of sale, and the court ruled that one act of sale under each count was sufficient in law to support the same.

2. The court ruled that the 5th count, though it alleges only one act of sale, was nevertheless sufficient in law.

3. The court ruled that each of the counts, although neither of them alleges a succession or number of acts of sale, was nevertheless sufficient in law.

4. The court ruled that the counts were good, although neither of them sets forth a number of specified acts of sale, and no bill of particulars was filed in aid of the counts.

5. The court ruled that the 12th, 13th and 14th counts were good, although neither of them alleges any specific act of sale.

6. The court ruled that it was not necessary for the attorney for the Commonwealth to show by evidence, that the defendant had no license to sell in the manner alleged ; and the attorney produced no evidence upon that point.

*Rantoul* and *Cushing*, for the defendant, contended in relation to the first five exceptions, that the offence created by Revised Stat. *c*. 47, § 3, consists in a series of acts by which the offender acquires the character of a seller or retailer, and therefore a series of acts must be averred, or must at least be proved ; but if the offence consists in a single act of sale, then it should be set forth in the indictment, with time, place and person. 2 Hawk. P. C. *c*. 25, § 59 ; *Commonwealth* v. *Pray*, 13 Pick. 362 ; *Commonwealth* v. *Davis*, 11 Pick. 432. On the point, that the burden of proof was on the government to show that the defendant was not licensed, they cited Chitty's

Common wealth *v.* Thurlow

*Nov. 8th* 1837.

Crim. Law, 556 ; 1 Phil. Ev. (6th ed.) 184 ; *Rex* v. *Rogers*, 2 Campb. 654 ; *Rex* v. *Hazy*, 2 Carr. & Payne, 458.

*Austin*, Attorney-General, for the Commonwealth, cited in regard to the form of the counts, *St.* 1786, *c.* 68, § 1 ; *Revised Stat. c.* 47, § 1, 2, 3 ; *Commonwealth* v. *Eaton*, 9 Pick. 165 ; and to the point, that the fact of having a license was matter of defence to be proved by the defendant, *Rex* v. *Smith*, 3 Burr. 1475 ; *The King* v. *Turner*, 5 Maule & Selw. 209 ; *The Apothecaries Company* v. *Bentley*, 1 Ryan & Moody, 159 ; *Commonwealth* v. *Samuel*, 2 Pick. 103 ; *Geuing* v. *The State*, 1 M'Cord, 573.

SHAW C. J. afterward drew up the opinion of the Court. Several of the exceptions taken in the present case, both to the decision of the judge who tried the cause, and in the nature of a motion in arrest of judgment, depend on the decision of one question, on the construction of the statute. It arises upon the first exception, for that in each of said counts the attorney for the Commonwealth offered evidence of only one act of sale, and though objected to, the court ruled that one such act of sale constituted an offence. The question is, whether this is the true construction of the act.

This indictment is founded on the Revised Statutes, c. 47, § 3. No person shall presume to be a retailer or seller of wine, brandy, rum or other spirituous liquors, in a less quantity than twenty-eight gallons, and that delivered and carried away all at one time, unless licensed, &c. under penalty of $ 20.

On the one hand, it is contended that this was not designed to inhibit and punish any single act of selling, but to prevent and punish the trade, occupation and employment of keeping a grog-shop, and being an habitual and common seller, and therefore, that a single act of selling, without other evidence of doing it as a trade, or habitual occupation, does not constitute the offence, and proof of it will not sustain the indictment.

On the other hand, it is insisted, that as the act does not in terms include in its description, *common* seller or *common* retailer, every man must be a seller or retailer, who sells or retails ; that being contrary to law, it is a presumptuous act ; and that each act of selling without license, is a violation of the true meaning of the law ; and that upon any other construc

ti.)n the law would be nearly a dead letter. The great diffi-
culty is, in ascertaining the meaning of the legislature in the
use of language so unusual in legal enactments, and so desti-
tute of exactness and precision. The meaning is to be ascer-
tained, if practicable, from all the other provisions of the
statute on the same subject, from previous acts in *pari materiâ*,
and from judicial constructions of those acts, if any have been
had.

No question arises here upon that part of the statute, which
prohibits unlicensed persons from selling spirit to be used on
their premises ; all the counts in this indictment simply charge
the selling by retail, without license. The question, there-
fore, turns solely on the third section respecting selling by
retail. That clause in the Revised Statutes is taken from
*St.* 1832, *c.* 166, § 2, with some unimportant variations, one
of which is, substituting 28 gallons instead of 10 gallons. The
statute of 1832 was itself a revision, with considerable altera-
tions, of the old *St.* 1786, *c.* 68, to which therefore it is proper
to refer. That statute, in the first section, unites taverners
and retailers all together and provides that no person may pre-
sume to be a common victualler, innholder, taverner, or sell-
er of wine, beer, ale, cider, brandy, rum, or any strong
liquors, by retail, or in a less quantity than 28 gallons, and
that delivered, &c. except he be first duly licensed, &c. on
penalty of £ 20 ; and in another part of the same section it
enacts, that if any person shall at any time sell any spirituous
liquor, &c. without license, he shall forfeit a sum not exceed-
ing £ 6, nor less than 40 shillings. Many of these provisions
were taken from still earlier enactments, to which, however, it
may not be necessary to refer.

By this statute of 1786 it is manifest that two distinct
offences were created, and under very different penalties ;
one, that of being a common victualler, or seller, that is, *com-
mon* seller, by retail, and this included as well beer, ale, and
cider, as wine, rum, and brandy ; the other, the specific offence
of selling spirituous liquor. The term " presume " in this
act is applied only to the offence of being a common taverner,
or seller by retail, and is not used in reference to the spe-
cific act of selling spirituous or mixed liquors. The term

originally got into use probably in this way ; keeping a house of entertainment without license was prohibited and made penal by law, but the law was disobeyed. New and additional means and penalties were requisite for enforcing the law, in which the offenders were denounced as persons presuming to violate known and salutary laws already in existence. The word has been retained in provisions in which it has no proper application, and, by its want of meaning, it has tended to throw some obscurity over them.

In comparing the statute of 1832 with the one last cited, it is manifest that there is a marked difference in this respect ; the earlier statute made two distinct offences, that of presuming to be a seller or common seller of either beer and ale, or rum and other spirits, under a large penalty of $ 66·66, and another, that of a single act of selling spirit, under a very moderate penalty, not less than $ 6·66 nor more than $ 20 ; but the later statute makes but one, and that under a penalty of $ 20. The two statutes are distinguishable in another respect ; the earlier one unites taverners and retailers together in the same sentence, apparently applying the word " common " to them all ; the later separates the two classes as to the mode of obtaining licenses, and as to the penalties, and does not in terms, or by any implication, apply the word " common " to retailers and sellers.

Of the two offences of the former statute, which did the latter intend to drop ? The penalty is the same which was before applied to the offence of selling. On the whole view of the subject, the Court are of opinion, that under this form of expression the legislature intend to prohibit every act of selling *spirituous* liquors, and that this construction will best reconcile all the provisions of the statute, and best promote the apparent intent of it. The meaning in any view is not very apparent ; but considering that the words will admit of this construction, that it was intended to abolish one of the offences under the old statute, with the penalties annexed to it, and retain the other, that the trade of being a common taverner or victualler is separately provided for in another part of the statute, under a distinct penalty, but that the act of selling spirit, which had long been punishable, is not prohibited in any other

part of the act, we are led to the conclusion, that in the last
act, the legislature intended to reënact the law against selling
spirit by retail, which may be accomplished by a single act of
sale, and to annex the smaller penalty of the former statute
to this offence. We think such has been the construction put
upon this statute ever since its enactment; such was the
construction put upon it at the trial of this cause in the court
below, and we think it was the correct and true construction.

Common-
wealth
v.
Thurlow.

The view thus taken by the Court upon the point of con-
struction, disposes of several of the other exceptions, founded
upon the suggestion, that only one act of selling spirit was
charged or proved.

And the Court are also of opinion, that this decision upon
the subject of construction, draws after it another conclusion,
which is, that as the offence consists not in sustaining a par-
ticular character, or habitually and usually pursuing a course
of dealing, but in doing a specific act, the indictment must
charge the doing of that act, with the usual precision and cer-
tainty requisite in other cases, so that it may be traversed, put
in issue and tried. It is not sufficient to follow the words of
the statute, and aver that the defendant was a retailer and sell-
er, but it must go further, and aver that at a time and place
stated, he did sell to some person named, or to a person un
known, as the case may be. As the 12th, 13th and 14th
counts do not conform to these requirements, we think that
they are defective, and the verdict rendered upon them cannot
be sustained.

But the 5th count seems not to be open to this objection.
It avers that at a time and place named, the defendant did
presume to be, and was a retailer and seller of spirituous
liquors, &c. and did then and there sell and retail, to one Mi-
chael Floyd &c. Had the existing statute, like the former one,
made two distinct offences, with different penalties, one, that
of being a seller of beer, ale, rum, &c. and the other, of sell-
ing spirituous liquor, this indictment might have been open to
another exception, that of charging two different offences in
one count, leaving the Court in doubt, in case of conviction,
what judgment to give. But as the whole describes but one
offence, the former part in the general words used by the

statute, and the latter by way of more exact specification, re-
quired by the rules of law, there is no such ambiguity or
doubt.

The last exception necessary to be considered is, that the
court ruled that the prosecutor need give no evidence in sup-
port of the negative averment, that the defendant was not duly
licensed, thereby throwing on him the burden of proving that
he was licensed, if he intends to rely on that fact by way of
defence.

The Court entertain no doubt, that it is necessary to aver
in the indictment, as a substantive part of the charge, that the
defendant, at the time of selling, was not duly licensed. How
far and whether under various circumstances, it is necessary
to prove such negative averment, is a question of great diffi-
culty, upon which there are conflicting authorities. Cases may
be suggested of great difficulty on either side of the general
question. Suppose under the English game laws, an unquali-
fied person, prosecuted for shooting game without the license
of the lord of the manor, and after the alleged offence and be-
fore the trial, the lord dies, and no proof of license, which may
have been by parol, can be given ? Shall he be convicted for
want of such affirmative proof, or shall the prosecution fail for
want of proof to negative it ? Again, suppose under the law
of this Commonwealth it were made penal for any person to
sell goods as a hawker and pedler, without a license from the
selectmen of some town in the Commonwealth. Suppose one
prosecuted for the penalty, and the indictment, as here, con-
tains the negative averment, that he was not duly licensed. To
support this negative averment, the selectmen of more than
three hundred towns must be called. It may be said, that the
difficulty of obtaining proof is not to supersede the necessity
of it, and enable a party having the burden, to succeed with-
out proof. This is true ; but when the proceeding is upon
statute, an extreme difficulty of obtaining proof on one side,
amounting nearly to impracticability, and great facility of furnish-
ing it on the other, if it exists, leads to a strong inference, that
such course was not intended by the legislature to be required.
It would no doubt be competent for the legislature, so to frame
a statute provision, as to hold a party liab'e to the penalty, who
should not produce a license.

Besides, the common law rules of evidence are founded upon good sense and experience, and adapted to practical use, and ought to be so applied as to accomplish the purposes for which they were framed.

But the Court have not thought it necessary to decide the general question ; cases may be affected by special circumstances, giving rise to distinctions applicable to them to be considered as they arise.

In the present case, the Court are of opinion that the prosecutor was bound to produce *primâ facie* evidence, that the defendant was not licensed, and that no evidence of that averment having been given, the verdict ought to be set aside. The general rule is, that all the averments necessary to constitute the substantive offence, must be proved. If there is any exception, it is from necessity, or that great difficulty, amounting, practically, to such necessity ; or in other words, where one party could not show the negative, and where the other could with perfect ease show the affirmative. But if a party is licensed as a retailer under the statutes of the Commonwealth, it must have been done by the county commissioners for the county where the cause is tried, and within one year next previous to the alleged offence. The county commissioners have a clerk and are required by law to keep a record, or memorandum in writing, of their acts, including the granting of licenses. This proof is equally accessible to both parties, the negative averment can be proved with great facility, and therefore, in conformity to the general rule, the prosecutor ought to produce it, before he is entitled to ask a jury to convict the party accused.

*Verdict set aside and a new trial granted.*